IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Norfolk Division

UNITED STATES OF AMERICA
V.
KEITH JERMAINE EVERETT

CASE #: 2:13CR67

## MOTION FOR COMPASSIONATE RELEASE PURSUANT TO 18 U.S.C. 3582 (C) (1) (A)

The Defendant, Keith Jermaine Everett, in Pro Se, in necessity move this court to modify his remaining sentence of 25 months to grant as time served or in the alternative to be served on home confinement pursuant to 3582 (C) (1) (A) due to extraordinary and compelling circumstances.

## INTRODUCTION

Keith Jermaine Everett asks for compassionate release "in the midst of the still-raging COVID-19 pandemic." Mr. Everett has completed over half of his time served. He has used his time to pursue educational goals and participate in reentry preparation activities while incarcerated. Mr. Everett is currently serving time at Yazoo City Low FCI, which has experienced significant outbreaks of COVID-19, and based on the renewed outbreaks facing with other BOP Yazoo facilities, is about to suffer yet another one. It is located in Mississippi, which – like most of the country- itself is experiencing a surge in COVID-19 cases and diminishing

1

hospital capacity. Remaining in prison through the COVID-19 pandemic, however, poses high risk to Mr. Everett.  Everett, who is 41 years of age, suffering from diabetes, high blood pressure, a body mass index of 30.5% which is considered obese and high cholesterol which are all are primary factors for a person to have serious complications or death if contracted COVID-19.

A recent study conducted by doctors at New York University's Langone Health Center found that the "obesity of patients was the single biggest factor, after age, in whether those with COVID-19 had to be admitted in a hospital." The Centers for Disease Control and Prevention ("CDC") further notes that "severe obesity increases the risk of a serious breathing problem called acute respiratory distress syndrome (ARDS), which is a major complication of COVID-19 and can cause difficulties with a doctor's ability to provide respiratory support for seriously ill patients," Similarly, a study of 5,000 hospitalized patients published on a website for the Journal of the American Medical Association showed that 57% had high blood pressure, 41 % were obese, and over one third had diabetes.  Such findings underscore that the risks to Mr. Everett's health are far from speculative.

If anything, releasing Everett from Yazoo make the community safer, by easing the medical risks and burden on the prison and the surrounding Mississippi healthcare system, benefiting those who live inside the prison and those who live outside of it, too. And with the coronavirus spreading faster and overrunning

2

hospital capacity, and given the medical conditions of Mr. Everett it is imperative for this court to act now. Accordingly, Mr. Everett respectfully moves this Court to grant his immediate compassionate release under 18 U.S.C.3582 (C) (1) (A).

## BACKGROUND

On May 29, 2013, Mr. Everett pled guilty to a one-count criminal information charging him with conspiracy to distribute and posses with intent to distribute five-hundred (500) grams or more of cocaine. On August 27, 2013, the defendant was sentenced to 188 months imprisonment followed by five years of supervised release.

Mr. Everett is serving his sentence at Yazoo City Low FCI. His projected release date is January 15, 2023. See *https: www.bop.gov/inmatelocator/*. Moreover, given that Mr. Everett would, in the normal course, spend several months near the end of his sentence in home – or – community confinement, he has completed more than 75% of the incarceration portion of his sentence.

On October 28, 2020, Mr. Everett submitted an electronic request for compassionate release to the warden of Yazoo City Low FCI. Thereafter, Mr. Everett never received a response back and waited more than 30 days for a reply to his request. He now files the instant motion after having waited more than 30 days from the date of his request to the warden.

3

## ARGUMENT

**I.   The 30-day period for exhaustion has been satisfied and the instant motion is ripe for decision.**

The compassionate release statute, 18 U.S.C. 3582, provides that a court may reduce a defendant's sentence and grant early release if "extraordinary and compelling reasons warrant such a reduction," 18 U.S.C. 3582 (C) (1) (A), and the defendant has either "fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier."

This Court has explained on several occasions, the exhaustion requirement under 18 U.S.C. 3582 (C) (1) (A) is waivable, and the COVID-19 pandemic presents circumstances that justify waiving the 30-day waiting period:

> A petitioner seeking compassionate release is generally required to exhaust his or her administrative remedies prior to bringing a motion before the district court. However, the exhaustion requirement may be waived under the following circumstances: (1) the relief sought would be futile upon exhaustion; (2) exhaustion via the agency review process would result in inadequate relief; or (3) pursuit of agency review would subject the petitioner to undue prejudice, *United States v. Zukerman,* 2020 WL 1659880, at *3 (S.D.N.Y. Apr. 3, 2020) *citing Washington V. Barr,* 925 F.3d 109, 118 (2d Cir. 2019). The COVID-19 pandemic, which could result in catastrophic health consequences for petitioners vulnerable to infection, implicates all three exceptions justifying the waiver of the exhaustion requirement.

4

*United States v. Poulios*, No. 2:09cr109. 2020 WL 1922775, at *1 (E.D. VA Apr. 21. 2020) (Jackson, J.). *See also King v. United States*, No. 2:14cr65, Doc. 257, at 6 (E.D. VA June 24, 2020(Jackson, J.) (exhaustion requirement is waivable); *United States v. Casey*, No. 4:18cr4, 2020 WL 2297184, at *2 (E.D. VA May 6, 2020) (Jackson J.) (waiving exhaustion requirement for compassionate release and holding that "preservation of the exhaustion requirement could subject [Casey] to severe illness and death if he contracts COVID-19 because of his underlying health conditions").

## II. This Court possess authority to modify Mr. Everett's sentence notwithstanding the CARES Act.

This Court has authority to order Mr. Everett's immediate release from incarceration and to include a period of home confinement at its discretion. Section 3582 (C) (1) (A) states in relevant part that the Court "may reduce the term of imprisonment, after considering the factors set forth in [18 U.S.C.] 3553 (a) to the extent they are applicable, if it finds that…extraordinary and compelling reasons warrant such a reduction…." Although the government has argued in past cases that the BOP should decide whether home confinement is warranted under its CARES Act authority, "the Government's contentions are plainly without merit," *Poulios*, 2020 WL 1922775, at *2. As this Court explained in *Poulios*,

> As an initial matter, the administrative allowances expanding the availability of home confinement provided to the BOP by the CARES Act do not limit or supersede the discretion afforded to the Court pursuant to the amended version of 3582 (C) (1) (A). Under the First

5

Step Act, it is for district courts to determine whether there are grounds for compassionate release, not the BOP. [...] Moreover, the Court's compassionate release discretion pursuant to 3582 (C) (1) (A) is not limited to home confinement.

### III. The COVID-19 pandemic presents an extraordinary and compelling reason for Mr. Everett release

Since January, 2020, COVID -19 has spread widely-and rapidly- throughout the United States. In the United States, more than 18.9 million people have been diagnosed with COVID-19 and more than 330,000 people have died. *See https://covid.cdc.gov/covid-data-tracker/#cases_casesper100klast7days (*updated Dec. 27, 2020 at 2:05pm).

Conditions now are even more dire, as "we've entered the worst period for the pandemic since the original outbreak in the Northeast." Alexis C. Madrigal & Erin Kissane, *The Worst Day of the Pandemic Since May,* Atlantic (Nov. 10, 2020), https://tinyurl.com/y5tqgsfy. In early November, "weekly infection reports reached record levels in mor than half the country," and "there were almost no hopeful signs in the data." *COVID-19 in the U.S., supra.*

COVID-19 spreads even faster in jails and prisons. So far, more than 252,000 prisoners have been diagnosed with COVID-19 and at least 1,450 prisoners and correctional officers have died. *COVID-19 in the U.S., supra.* Across BOP facilities, more than 35,000 prisoners have tested positive-more than one in four of those tested- and 172 prisoners and 2 staff members have died. See Federal

6

Bureau of Prisons, *COVID-19 Cases, https: www.bop.gov/coronavirus/* (updated Dec. 27, 2020). As of August, eighty-seven of the top one hundred American infection clusters-and each of the top ten-were linked to detention centers or correctional facilities. Editorial, *Coronavirus Cases in Prisons are Exploding, More People Need to be Let Out,* Wash. Post (Aug. 21, 2020), https://tinyurl.com/ybsdeqft. The COVID-19 rate for prisoners is "5.5 times higher" than the rate of the U.S. population as a whole. Brendan Saloner et al., *COVID-19 Cases and Deaths in Federal and State Prisons,* JAMA (July 8, 2020), https://tinyurl.com/ydy7lcxa. And compared to those infected on the outside, prisoners with COVID-19 are three times likely to die.

The outbreak at Everett's prison, Yazoo City Low, has been especially severe. At least 85 prisoners have been infected. Bureau of Prisons, *COVID-19 Inmate Test Information,* https://tinyurl.com/w762efz (updated Dec. 27, 2020). Three inmates have died. *See* Alissa Zhu, *Three Inmates Died of Coronavirus at Federal Mississippi Prison in Yazoo City, Miss.* Clarion Ledger (June 8, 2020), https://tinyurl.com/y6cmw4df. Although the Bureau of Prisons reports that most of the others have "recovered," the jury is still out on whether and to what extent a previous COVID-19 infection confers immunity: Prisoners who have already been infected will "have to wait and see whether they remain immune, and if so for how

7

long. Richard Harris, *How Long Will Immunity to the Coronavirus Last?* NPR (July 23, 2020), https://tinyurl.com/y32szucj.

In any event, another severe outbreak seems inevitable. Five staff members at Yazoo City Low have active COVID-19 infections. BOP, *COVID-19 Cases*, https://tinyurl.com/w762efz (updated Dec. 27, 2020). And the two other BOP prisons at Yazoo (Yazoo City USP and Yazoo City Medium FCI) have a total of 112 active inmate infections and 13 active staff infections. It is a matter of time until Yazoo City Low suffers its next outbreak. Despite these trends, BOP recently resumed allowing in-person social visits-further increasing the risk of spread to and from the community. *See* Luke Barr, *Bureau of Prisons Resumes In-Person Visits as Inmates, Staff Continue to Die from COVID-19*, ABC News (Aug. 31, 2020), https://tinyurl.com/y52w3fkr.

In granting compassionate release, many courts have acknowledged that vulnerable defendants like Mr. Everett are at grave risk despite BOP precaution. "Even in the best run prisons, officials might find it difficult if not impossible to follow the CDC's guidelines for preventing the spread of the virus among inmates and staff: practicing fastidious hygiene and keeping a distance of at least six feet from others." *United States v. Esparza*, No. 1:07-cr-00294-BLW, 2020 WL 1696084 (D. Idaho, Apr. 7, 2020); *see also United States v. Muniz*, Case No. 4:09-cr-199, 2020 WL 1540325, at *1 (S.D. Tex. Mar. 30, 2020) ("While the Court is

8

aware of the measures taken by the Federal Bureau of Prisons, news reports of the virus's spread in detention centers.... demonstrate that individuals housed within our prison systems nonetheless remain particularly vulnerable to infection."). Accordingly, courts in the Fourth Circuit and across the country have concluded that a defendant's vulnerability to COVID-19 constitutes an "extraordinary and compelling reason" in favor of compassionate release. *See, e.g., United States v. Chatelain*, No. 1:19-cr-133, Dkt. No. 73 (E.D. VA May 1, 2020) (granting compassionate release to 70-year-old defendant at FCI Forest City Low); *United States v. Poulios*, No. 2:09-cr-00109-RAJ-TEM, 2020 WL 1922775, at *3 (E.D. VA Apr. 21, 2020) (granting compassionate release "because of the great risk that COVID-19 poses to a person of [defendant's] age with underlying health conditions"); *United States v. Jones*, No. 3:11-cr-249 (E.D. VA Apr. 3, 2020) (granting compassionate release and converting remainder of sentence to home confinement in light of COVID-19); *United States v. Edwards*, No. 6:17-cr-3-NKM, 2020 WL 1650406, at *6 (W.D. VA Apr. 2, 2020) (granting compassionate release); *United States v. Collins*, No. CCB-10-336, 2020 WL 1506176 (D. Md. Mar. 30, 2020) (granting compassionate release to "non-violent drug offender who has already served a lengthy sentence" even though defendant did not have underlying health condition).

A.  <u>Mr. Everett is at heightened risk of serious illness from COVID-19.</u>

As noted, Mr. Everett's medical conditions present a serious risk to his life should he contract COVID-19. First, Mr. Everett is obese. Obesity is a weight accumulation that results in a Body Mass Index of 30.0 or higher. Mr. Everett is 6'0" and weighs 225 pounds, putting her Body Mass Index at 30.5%. <u>https://www.cdc.gov/obesity/adult/defining.html</u>  Mr. Everett's obesity alone makes it more likely that he will experience serious complications from COVID-19.  Recent medical data has found obesity to be "one of the most important predictors of severe coronavirus illness" and "young adults with obesity appear to be a particular risk, studies show." This is because obesity "can cause compression of the diaphragm, lungs and chest capacity." Further, individuals with obesity are at a higher risk because obesity increases the likelihood of death as a consequence of ARDS, a serious breathing problem.  ARDS can cause difficulties with a doctor's ability to provide respiratory support for seriously ill COVID-19 patients. One of the largest studies in the U.S. identify obesity as a prominent factor analyzed data from more than 4,000 patients with COVID-19 at NYU's Langone Health Center. The study found that "the chronic condition with the strongest association with critical illness was obesity, with substantially higher odds ratio than any cardiovascular or pulmonary disease." <u>www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/groups-at-higher-risk.html</u> (last visited Dec 27, 2020).

Moreover, individuals with obesity can also have multiple serious chronic diseases and underlying health conditions that increase the risk of severe illness from COVID-19.

Indeed, Mr. Everett also suffers from high blood pressure, which further compounds his risk of serious complications from COVID-19. Normal blood pressure is usually defined as a systolic pressure of less than 120 and a diastolic pressure of less than 80, or 120/80. High blood pressure is typically defined as a systolic pressure over 130 or diastolic pressure over 80. The higher the blood pressure levels, the greater the risk for other health problems, such as heart disease, heart attack, and stroke. Hypertension, or high blood pressure, is one of the most commonly associated diseases with severe cases of COVID-19 due to the coexisting illnesses in patients who have been admitted to hospitals and their risk of death. www.thelancet.com/journals/lancet/article/PIIS0140-6736(20)31131-4/fulltext. As noted, before, a recent study of 5,000 hospitalized patients published on a website for the Journal of the American Medical Association showed that 57% had high blood pressure, 41% were obese, and over one-third had diabetes. Mr. Everett suffers from all three conditions, each alone presenting a serious risk of illness should he contract COVID-19.

Infections are more serious in people with diabetes. One reason is that diabetes affects the way the immune system works, making it harder for the body

11

to fight viruses. Also, diabetes causes high blood sugar levels, and the International Diabetes Federation observe that the novel coronavirus "may thrive in an environment of elevated blood glucose." Diabetes also keeps the body in a low-level state of inflammation, which makes its healing response to any infection slower. High blood sugar levels combined with a persistent state of inflammation make it much more difficult for people with diabetes to recover from illnesses such as COVID-19. The CDC cite research indicating that people with diabetes who develop COVID-19 may have a 7.3% risk of death from a COVID-related illness, compared with 5.6% for people who have cancer, for example. COVID-19 and diabetes: Risks, types, and prevention (medicalnewstoday.com)

Now adding to those harms, a study by the Scripps Research Institute has shown that high cholesterol levels in lung tissue may be the key culprit in COVID-19 deaths, especially for those with such underlying chronic conditions as hypertension, diabetes and cardiovascular disease. "As cholesterol increases with age and inflammation [e.g., smoking and diabetes], the cell surface is coated with viral entry points and optimally assembled viral entry proteins," the study says. It's well established that cholesterol levels generally increase with age- a point that runs parallel with the age-related severity and mortality rate from COVID-19. Cholesterol could be the culprit in COVID-19 deaths | Pittsburgh Post-Gazette (post-gazette.com)

Finally, in addition to the risk Mr. Everett faces due to his medical issues, the CDC now recognizes that he faces a statistically greater risk from COVID-19 as an African-American man. The CDC's recent revisions included the following updated guidelines: "Long-standing systemic health and social inequities have put some members of racial and ethnic minority groups at increased risk of getting COVID-19 or experiencing severe illness, regardless of age. Specifically, the CDC concluded Mr. Everett's race makes him *five times more likely* to be hospitalized if he contracts COVID-19 than a non-Hispanic white person. https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precaution/racial--minorities.html

### IV. Compassionate release is appropriate upon consideration of the serious risk to Mr. Everett, his personal characteristics and his release plan

In determining whether Mr. Everett's sentence should be reduced based on an "extraordinary and compelling reason," this Court must consider whether he presents a danger to the safety of any other person or to the community, as provided in 18 U.S.C. 3142 (g). See U.S.S.G. 1B1.13(2). He does not.

Mr. Everett is a non-violent offender. He has maintained contact with his family – his mother, father, sister, grandmother and nephew- and enjoys strong family support. Moreover, he has a stable residence in which to live should he be released residing with his mother, Delsita R. Everett in Norfolk, VA. Since his

13

incarceration, the defendant has taken great strides to rehabilitation. He has completed the following courses: Drug Abuse Education, Commercial Driving License, Money smart, Keyboarding, Business 1 and 2, Spanish Money smart, Inside Out Dad, and Career Planning. He has already obtained employment with Triple Vision Logistics as a driver upon release. Also, in his spare time he reads self-improvement and spiritual literature, regularly participates in physical fitness programs and attends religious chapel services weekly. However, due to the recent global outbreak of COVID-19 on April 1, 2020 all programming classes was suspended until further notice.

As an added measure of assurance that Mr. Everett will pose no danger to the public, this Court also could impose a period of home confinement as a condition of his supervised release. With or without home confinement, if this Court releases Mr. Everett he would be subject to supervision, which would further assure his productive and law-abiding return to the community. *See, e.g., Gall v. United States,* 552 U.S. 38, 44, 48 (2007) (rules governing probation constitute "a substantial restriction of freedom"). This Court will be able to monitor closely his adjustment to release and penalize him, including re-incarcerating him, should he violate the conditions of release.

In addressing a defendant's potential danger to the community, courts have found that granting release in the context of the COVID-19 pandemic better

14

ensures public safety by decreasing the prison population. In one recent decision, a district court found that the "physical and mental health' factor cuts in favor of release for any defendant during this public health crisis." *See United States v. Davis*, No. 1:20-cr-9-ELH, 2020 WL 1529158, at *4 (D. Md. Mar. 30, 2020) ("If released, Davis will be removed from a custodial setting where the risk of infection is higher for everyone, including the healthy, and he will live in the community where he is able to practice social distancing, self-quarantine, self-isolate if infected, and seek medical treatment if necessary.") *See also United States v. Mclean*, No. 19-cr-380, Dkt. No. 21 (D.D.C. Mar. 28, 2020) ("The facts and evidence that the Court previously weighed in concluding that Defendant posed a danger to the community have not changed – with one exception…COVID-19 [which] not only rebuts the statutory presumption of dangerousness, *see* 18 U.S.C. 3142 (e), but tilts the balance in favor of release."). For the same reasons, Mr. Everett's release would not present a danger to the public, but instead would further public safety.

  Each day in custody is increasingly risky for Mr. Everett. As this and other courts have recognized, inmates have a very limited ability to practice social distancing or other protective measures to minimize the risk of infection with COVID-19. Mr. Everett has been lucky to avoid infection so far with his serious medical issues knowing that he is especially vulnerable should he be infected.

Moreover, he has formulated a release plan that will adequately address the concerns presented by COVID-19, protect the public, and ensure his successful transition into the community. In these circumstances, justice does not require that Mr. Everett remain in a prison environment while helplessly facing an elevated risk of serious complications or death should he contract COVID-19. Rather, compassion warrants his release.

## CONCLUSION

Mr. Everett respectfully requests that this Court order his immediate compassionate release, with or without a period of home confinement, with the following additional supervised release conditions: 1.) that he be released to reside with his mother, Delsita R. Everett in Norfolk, VA and 2.) that within 72 hours of release, he contacts the United Stated Probation Office for specific reporting instructions.

Respectfully Submitted,

KEITH JERMAINE EVERETT
Register # 54447-083
Yazoo City FCI Low
2225 Haley Barbour Parkway
Yazoo City, MS 39194

## **CERTIFICATE OF SERVICE**

The Defendant, Keith Jermaine Everett, certify that on the 29th Day of December 2020. The foregoing motion has been mailed by first class U.S. Mail, postage prepaid, and properly addressed to the following:

US District Court Clerk
600 Granby Street Suite 193 A
Norfolk, VA 23510